**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Waldy Charles,<br><br>                 Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>                 Defendant. | No. CV-20-01314-PHX-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Waldy Charles's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial and an Opening Brief (Doc. 16, "Pl. Br."). Defendant SSA Commissioner submitted a Response Brief (Doc. 18, "Def. Br.") and Plaintiff filed a Reply Brief (Doc. 19, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 13, "R.") and now reverses and remands for a new disability determination.

**I.    BACKGROUND**

Plaintiff filed an Application for Disability Insurance benefits on August 7, 2016, for a period of disability beginning on May 1, 2016. (R. at 10.) His claim was denied initially on October 26, 2016, and again upon reconsideration on February 7, 2017. (R. at 10.) Plaintiff appeared before an Administrate Law Judge ("ALJ") for a hearing regarding his claim on January 8, 2019, which the ALJ denied on April 17, 2019. (R. at 10, 21.) On

April 28, 2020, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 1–3.)

The Court will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: bipolar disorder, major depressive disorder, and general anxiety disorder. (R. at 12.) The ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset date through the date of the decision. (R. at 20.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 13.) The ALJ then made the following determination with respect to Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] can follow simple instructions for unskilled work with occasional contact with coworkers and the public.

(R. at 15.) Based on Plaintiff's RFC, the ALJ found that Plaintiff was able to perform "jobs that exist in significant numbers in the national economy." (R. at 19.) Accordingly, the ALJ determined that Plaintiff was not disabled during the relevant period. (R. at 20.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is

susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four, where she assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step. There, she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

**III.  DISCUSSION**

Plaintiff raises two issues for the Court's consideration. First, Plaintiff argues that the ALJ erred in assigning limited weight to the medical opinion of Plaintiff's treating physician, Dr. Marc Schwartz, and great weight to the opinions of consultative physicians Dr. Eric Penner and Dr. Margaret Pollack. (Pl. Br. at 9–15.) Second, Plaintiff contends that the ALJ erred in rejecting his symptom testimony. (Pl. Br. at 15–21.) The Court will address each argument in turn.

**A. Medical Opinions**

Plaintiff first argues that the ALJ erred in assigning limited weight to the opinion of Dr. Schwartz and great weight to the opinions of Dr. Penner and Dr. Pollack. (Pl. Br. at 9–15.) In response, Defendant argues that the ALJ properly provided specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Schwartz's opinion and crediting the opinions of Dr. Penner and Dr. Pollack. (Def. Br. at 8–14.) For the reasons that follow, the Court agrees with Plaintiff.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Generally, an ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quotations omitted).

In this case, the ALJ assigned only limited weight to Dr. Schwartz's opinion because it was "not consistent with the evidence of record." (R. at 17.) In particular, the ALJ found Dr. Schwartz's opinion as to Plaintiff's mental limitations inconsistent with the substance

of his treatment records. (R. at 18.) It was Dr. Schwartz's opinion that Plaintiff had "moderately severe limitations in his ability to understand, carry out and remember instructions; in his ability to respond to supervision, coworkers, and perform simple tasks and had severe limitations in his ability to respond to customary work pressures, in activities of daily living, in constriction of interest and in deterioration in personal habits." (R. at 17, 345–55, 400–02.) In contrast, the ALJ determined that Dr. Schwartz's treatment records in fact "show[ed] fairly normal objective exams with the exception of some dysphoric moods and ruminating thoughts." (R. at 18.) In support of that finding, however, the ALJ cited with particularity only a single treatment note, in which Dr. Schwartz described Plaintiff as calm, pleasant, and well-dressed, and in which he noted that Plaintiff had good activities of daily living ("ADLs") and eye contact. (R. at 18, 550.) Moreover, as Plaintiff notes in his brief, Dr. Schwartz indicated during that same examination that Plaintiff had been struggling with his mood, anger, and hypomania, and observed that Plaintiff was experiencing depression, dysphoria, anxiety, ruminating ideations, guilt, and racing thoughts. (Pl. Br. at 11–12; R. at 550.) That Plaintiff made eye contact and had good ADLs does not invalidate Dr. Schwartz's other findings, which were entirely consistent with his assessment of Plaintiff's limitations. (Pl. Br. at 12.)

It is true that several of Dr. Schwartz's assessments indicate that Plaintiff had good ADLs, made good eye contact, denied suicidal ideation, had no signs of psychosis, and had good energy. (R. at 477–78, 483–84, 494–95, 516, 541–42, 545–46, 550–51.) Indeed, as the ALJ noted in his findings, Plaintiff frequently had normal mental status examinations from 2016 to 2018. (R. at 17, 281, 284, 350, 358, 376, 380, 387, 393.) The ALJ failed to recognize, however, that Dr. Schwartz's treatment records during that same period consistently indicated that Plaintiff was depressed, anxious, and dysphoric. (R. at 470–71, 474, 494–96, 518–20, 524–26, 540–43, 544–47.) Moreover, between March 2018 and December 2018, Plaintiff was hospitalized on three occasions "for suicidal ideation and mood instability." (R. at 16.) These episodes were dismissed by the ALJ, however, as

having been "short lived" and "resolved quickly." (R. at 16.) Such statements fall short of the specific and legitimate reasons required to set aside a treating physician's opinion.

In light of the forgoing, the Court concludes that the ALJ's decision to assign little weight to Dr. Schwartz's opinion was not supported by substantial evidence. *Carmickle*, 533 F.3d at 1164. Specifically, the ALJ failed to "set[] out a detailed and thorough summary of the facts and conflicting medical evidence." *Magallanes*, 881 F.2d at 751. Instead, the ALJ's findings focused disproportionately on positive observations made by Dr. Schwartz during his examinations and failed to consider assessments that consistently showed Plaintiff as depressed, anxious, and dysphoric.

Plaintiff also asserts that the ALJ erred in assigning great weight to the opinions of nonexamining consultants Dr. Penner and Dr. Pollack. (Pl. Br. at 12–13.) The Court disagrees. It was the opinion of Dr. Penner and Dr. Pollack that Plaintiff had only "moderate limitations in social functioning and in concentrating persistence and pace," and that Plaintiff was "capable of performing simple work." (R. at 17, 54–64, 65–78.) The ALJ assigned their opinions great weight in part because they were consistent with evidence in the record that Plaintiff's mental status examinations showed mostly stable findings. (R. at 17, 628–44, 676–83, 684–732.) As support, the ALJ cited multiple mental status examinations that aligned with the opinions of Dr. Penner and Dr. Pollack and showed mostly stable findings. (R. at 17, 628–64, 676–83, 684–714, 715–32.) The Court finds that the ALJ provided sufficiently specific, clear, and legitimate reasons for assigning substantial weight to the medical opinions of Dr. Penner and Dr. Pollack. Whereas the ALJ failed to consider the full import of Dr. Schwartz's treatment records in assigning weight to his opinion, the ALJ did adequately assess the record in assigning weight to the opinions of Dr. Penner and Dr. Pollack.

### B.    Plaintiff's Symptom Testimony

Plaintiff next argues that the ALJ erred in rejecting his symptom testimony. (Pl. Br. at 15–21.) For the reasons that follow, the Court agrees.

To evaluate a claimant's testimony regarding pain and symptoms, an ALJ performs a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This standard is the most demanding in Social Security cases. *Id.* at 1015.

In this case, the ALJ provided two reasons for rejecting Plaintiff's symptom testimony. First, the ALJ stated that Plaintiff's testimony was inconsistent with objective medical evidence the record. Second, the ALJ found that Plaintiff's testimony was inconsistent with Plaintiff's activities of daily living. (R. at 16.) The Court evaluates each reason in turn.

The ALJ first rejected Plaintiff's symptom testimony as inconsistent with objective medical evidence. (R. at 16.) In particular, the ALJ found that although "[Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," his "statements concerning the alleged intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 16.) But the Ninth Circuit has expressly held that a claimant "need not show that her impairment could reasonably be expected to cause the *severity* of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282 (emphasis added) (citing *Orteza v. Shalala*, 50 F.3d 748, 749–50 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989)). Thus, because the ALJ determined that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms" (R. at 16.), the law requires that the ALJ's decision to discredit Plaintiff's testimony as to the intensity and severity of

those symptoms be supported by "specific, clear and convincing reasons." *See Garrison*, 759 F.3d at 1014–15 (citing *Smolen*, 80 F.3d at 1281). The ALJ provided no such reasons. While the ALJ did find that many of Plaintiff's mental exams "show[ed] normal findings" and "reported stable moods," he also noted that such exams frequently detailed Plaintiff's dysphoria, depression, and anxiety. (R. at 16.) Citation to isolated positive treatment reports, without additional explanation, falls short of the specific and detailed findings necessary to set aside Plaintiff's testimony as to the severity of his impairments.

The ALJ then rejected Plaintiff's symptom testimony based on inconsistencies with his daily activities. Although Social Security regulations permit an ALJ to consider a claimant's daily activities when assessing the intensity and persistence of the claimant's subjective symptoms, *see* 20 C.F.R. § 404.1529(c)(3)(i), the Ninth Circuit has emphasized that a "disability claimant[] should not be penalized for attempting to lead [a] normal [life] in the face of [his] limitations." *Garrison*, 759 F.3d at 1016. In this case, the ALJ found that Plaintiff could manage his personal care, take his children to the park, visit with his parents, family, and friends, and attend church without "significant difficulty." (R. at 16.) Plaintiff argues these minor activities of daily living do not show inconsistency with his reported symptoms. (Pl. Br. at 20.) The Court agrees. When "a claimant is able to spend a *substantial part* of his day engaged in pursuits involving the performance of physical functions that *are transferable to a work setting*, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." *Fair*, 885 F.2d at 603 (emphasis added). But that is not the case here. The ALJ did not provide sufficient evidence to establish that Plaintiff's activities of daily living contradict his symptom testimony. *See Garrison*, 759 F.3d at 1016 (noting differences between activities of daily living and activities performed for a full-time job, including flexibility of timing, ability to receive help from others, and being held to a standard of performance). The ALJ did not cite any evidence that Plaintiff performs the described activities more than periodically and for more than brief periods of time. And there is no indication that the described activities establish Plaintiff's ability to sustain the activity required in a work setting. Accordingly,

the supposed inconsistencies between Plaintiff's daily activities and his symptom testimony do not satisfy the requirement of a clear, convincing, and specific reason to discredit Plaintiff's testimony.

**C. Remedy**

Plaintiff asks the Court to apply the "credit-as-true" rule, which would result in a remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl. Br. at 21–23.) The credit-as-true rule only applies "only in rare circumstances." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1100 (9th Cir. 2014). For the rule to apply, three elements must be present. *Id.* at 1099–1102. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence or claimant testimony. *Id.* at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of [the] proceeding." *Id.* (internal citations and quotations omitted).

In this case, the ordinary remand rule, not the credit-as-true rule, applies. As discussed above, the ALJ failed to provide legally sufficient reasons for discrediting the opinion of Plaintiff's treating physician, Dr. Schwartz. The Court agrees with Defendant, however, that the record contains contradictory evidence as to whether Plaintiff has the residual functional capacity to perform jobs that exist in significant numbers in the national economy. (*See* Def. Br. at 8.) Specifically, the State agency consultants found that Plaintiff had only moderate mental limitations and was capable of performing simple work, while Dr. Schwartz opined that Plaintiff was severely limited in his ability to understand and remember and instructions and respond to customary work pressures. (R. at 17.) When the record contains contradictory opinions, the ALJ, not this Court, must resolve the conflict.

*Treichler*, 775 F.3d at 1101. Therefore, because there are outstanding issues that must be resolved before a determination of disability can be made, the Court will remand this matter for further development of the record.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE ORDERED** remanding this matter to the Social Security Administration for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 17th day of September, 2021.

Michael T. Liburdi
United States District Judge